William D. Hyslop
United States Attorney
Eastern District of Washington
Brian M. Donovan
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>$26,516.45 U.S. FUNDS,<br><br>Defendant. | VERIFIED COMPLAINT FOR FORFEITURE *IN REM* |

Plaintiff, United States of America, by its attorneys, William D. Hyslop, United States Attorney for the Eastern District of Washington, and Brian M. Donovan, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## I. NATURE OF THE ACTION

1. This is an action to forfeit and condemn to the use and benefit of the United States of America the following listed property, hereafter the "Defendant Property," for violations of 18 U.S.C. § 1343, Wire Fraud, and 18 U.S.C. § 1344, Bank Fraud.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  1

## II. THE DEFENDANT(S) *IN REM*

2. The Defendant Property consists of the following property:

$26,516.45 U.S. funds from the sale of 200 Viewmont Dr. SE, Moses Lake, WA, held in escrow by Stewart Title Company in Stewart Trust, Escrow File #:801297

## III. JURISDICTION AND VENUE

3. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the Defendant Property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the Defendant Property under 28 U.S.C. § 1355(b).

5. Venue is proper in this district pursuant to 28 U.S.C. §1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district.

## IV. BASIS FOR FORFEITURE

6. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 6 above.

7. The United States alleges that the Defendant Property is subject to forfeiture to the United States because it is property constituting or derived from proceeds traceable to a violation(s) of 18 U.S.C. § 1343 and 18 U.S.C. § 1344. As a result of the foregoing, the Defendant Property is liable to condemnation and

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  2

forfeiture to the United States for its use, in accordance with the provisions of pursuant to 18 U.S.C. § 981(a)(1)(C).

## V. FACTS

1. In or around September 2019, Detective Adam Munro of the Moses Lake, Washington Police Department began investigating potential fraud and embezzlement against Experience Powersports (XPR) by a former employee. On or around March 10, 2020, United States Secret Service Special Agent Randolph Redder joined the investigation at the request of Detective Munro.

2. Based on facts uncovered in the investigation, upon information and belief XPR's former manager, Derek M. Smith, engaged in bank and wire fraud in order to embezzle approximately $898,387.35 from the company since 2016.

3. Based on facts uncovered in the investigation, upon information and belief Derek Smith has a brother, Carson Smith, who was also working for XPR as the parts manager. Based on information uncovered in the investigation, Carson Smith benefitted from Derek's Smith alleged criminal actions by having his salary inflated above the agreed amount with the owners of the business.

4. Derek Smith and Carson Smith were fired from their employment with XPR on or about August 31, 2019.

### Forensic Accounting Report Findings

5. Clifton Larson Allen LLP (CLA), a forensic accounting firm, was hired by XPR to investigate the loss to the company and to establish the amount of money that

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  3

was embezzled by the suspect. CLA provided forensic accounting and investigative services for XPR for the period of January 2016 through August 2019. CLA's report states the following synopsis:

- On September 17, 2019, XPR engaged CLA to provide forensic accounting and investigative services for XPR for the period of January 2016 through August 2019. The analysis performed by CLA was based on discussions with XPR personnel and the review of XPR financial records related to the alleged fraud discovered by XPR upon uncovering evidence of missing company funds and financial misappropriation believed to have been committed by former employees Derek Smith, general manager, and Carson Smith, parts manager.

- The CLA report states that on August 31, 2019, XPR terminated Derek Smith's and Carson Smith's employment with XPR. The alleged theft and financial misappropriation was discovered by XPR prior to and after their departure from the company. The initial discovery was made by an XPR sales manager, through an internal review of financial activity and disbursements. The sales managers noticed that the company's cash balance in US Bank was lower than what he expected and discovered several other anomalies related to sales and other financial transactions. IT was discovered that the company's accounts payable were not being paid on time, which caused a review of XPR's US Bank cash balance. Based

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  4

on an analysis of the sales activity, the sales manager concluded that based upon the company's sales there should have been a significantly higher cash balance in the bank and the bank account did not reflect all of the sales revenue of the company.

- The CLA report further revealed Derek Smith was able to perpetrate the alleged theft of funds schemes and financial misappropriation because he was given the responsibility for overseeing the business affairs of XPR and had access to the company's financial records. Derek Smith was responsible for managing company funds and presenting financial information to US Bank, floor financing lending companies, external accountants, and the owners of the company. It has come to light that Derek Smith sought to gain control over company financial resources by falsely presenting himself as the owner of the company to the banks, floor financing companies, and customers, as well as falsely designating himself as a governor of the company with the Washington Secretary of State.

- Based on the work performed and information shared with CLA by XPR, Derek Smith appears to have misappropriated XPR funds by methods involving the following:

   a. Derek Smith caused payroll overpayments to both himself and Carson Smith:

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* 5

      i. Purposely and without authorization increased the wages paid by XPR to Derek Smith above the agreed $70,000.00/year (approximately $2,692.30/bi-weekly);

      ii. Purposely and without authorization increased the commissions paid by XPR to Derek Smith above the agreed $15,000/year;

      iii. Purposely and without authorization increased the commission paid by XPR to Carson Smith above the agreed $8,500/year.

b. Derek Smith directed payment of his personal American Express credit card bills with XPR company funds, which included purchases of materials and supplies for use at his personal residence, as well as purchases of personal travel and entertainment and other personal items.

c. Without knowledge or consent of the owners, Derek Smith improperly redirected company cash receipts that should have been deposited into the company's US Bank account.

d. Derek Smith failed to pay the warranty company for warranty coverage that customers had purchased, which resulted in customers believing they had warranty coverage when in fact the warranty

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* 6

company never received the application or payment to activate the warranty.

    e. Without knowledge or consent of the owners, Derek Smith borrowed funds from an employee on behalf of the company and repaid the loan using company funds in excess of the original loan.

    f. Derek Smith failed to file and pay sales tax to the state, resulting in significant penalty and interest charges in addition to unpaid sales tax.

6.     CLA determined that XPR suffered a total estimated loss of $898,387.35 related to the alleged theft and unauthorized actions committed by Derek Smith and Carson Smith.

**<u>Fraudulent Proceeds Obtained By Derek Smith</u>**

7.     Based on information received from the owner of XPR, Derek Smith's job duties were limited to overseeing the employees and the outsourced bookkeeper, managing the general operations of the business, depositing funds into the company's bank account, and running the payroll for the company. Over time, Derek Smith was trusted to take on additional responsibilities and eventually had control over the company finances, which entailed direct communication with the outsourced bookkeeper, direct access to the bank accounts and payroll, and control over all of the company's financial operations. Derek Smith was authorized to issue himself typed payroll and commission checks, but he was not authorized to inflate the amounts

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  7

above the agreed upon salary of $70,000 and agreed upon commission of $15,000. Further, Derek Smith was not authorized to write himself handwritten reimbursement checks or other checks from XPR's accounts.

8. Records provided by XPR indicate the fraudulent proceeds were obtained by Derek Smith through unauthorized checks Derek Smith caused to be issued by XPR directly to himself. When issuing the checks to himself from XPR's account, Derek Smith falsely alleged the checks were for payroll, reimbursements, and other unknown payments.

9. Records provided by XPR indicate Derek Smith used interstate wires by obtaining the fraudulent proceeds through the unauthorized payments from XPR's company bank account to his personal American Express account via online payments in the amount of $110,695.59 and using online banking to move fraud proceeds from his Horizon Credit Union and Wheatland Bank accounts.

10. Records provided by XPR indicate Derek Smith engaged in bank fraud by obtaining moneys under the custody and control of US Bank on behalf of XPR through false or fraudulent pretenses and representations through holding himself out to be the owner of the company to the bank and issuing and signing checks from XPR's US Bank account without authorization.

11. Records provided by XPR reveal the following fraudulent salary and commission overpayments to Derek Smith:

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  8

a. During the year 2016, Derek Smith received $66,954.31 in commissions, which is $51,954.31 more than the agreed upon amount of $15,000.

b. During the year 2017, Derek Smith received $124,941.92 in commissions, which is $109,941.92 more than the agreed upon amount of $15,000.

c. During the year 2018, Derek Smith received $64,542.34 in commissions, which is $49,542.34 more than the agreed upon amount of $15,000.

d. During the year 2018, Derek Smith received an overpayment of his base salary in the amount of $41,047.35.

e. During the year 2019 Derek Smith received $35,429.51 in commissions, which is $20,429.51 more than the agreed upon amount of $15,000 (it should be noted Derek Smith was terminated from XPR on August 31, 2019).

12. The fraudulent proceeds were deposited into two bank accounts in the name of Derek Smith: (a) Horizon Credit Union account ending 81037 in the name of Derek M Smith and Danielle R Resendez; and (b) Wheatland Bank account ending 9376 in the name of Derek Smith.

13. Bank records obtained from Horizon Credit Union for Derek Smith and Danielle Resendez account ending in 1037 for the years 2018 and 2019 indicate that in 2018 and 2019 Derek Smith caused at least 142 checks to be issued by XPR and signed by Smith, many of them handwritten, which were deposited into Smith's

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  9

Horizon Credit Union account. The total amount of checks from XPR deposited into Smith's Horizon bank account is at least $262,368.50.

    14.    Bank records obtained from Wheatland Bank for Derek Smith account ending in 9376 indicate that in April and May 2019, Derek Smith caused at least three checks to be issued by XPR and signed by Smith, which were deposited into Smith's Wheatland Bank account. The total amount of checks from XPR deposited into Smith's Wheatland bank account is at least $5,299.78.

    15.    Based on facts uncovered in the investigation and the records reviewed by investigators, upon information and belief Derek Smith caused checks totaling $267,668.28 in 2018 and 2019 to be issued by XPR to him, which were signed and deposited by him. Taking into account his agreed upon salary of $70,000/year and commissions of $15,000/year for 2018 and two-thirds of 2019 (Derek Smith was fired from XPR in August 2019) in the amount of approximately $141,100, the total amount of fraud proceeds obtained by Derek Smith represented in these transactions is at least $126,568.28.

## The Defendant Property

    16.    Bank records indicate that the fraud proceeds obtained by Derek Smith and deposited into his Horizon Credit Union and Wheatland Bank accounts were used to pay the mortgage on his former residence located in Moses Lake, Washington.

    17.    The residence was sold on or about June 26, 2020 to a legitimate purchaser. The Defendant Property was seized pursuant to a federal seizure warrant

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* 10

issued on June 25, 2020, following the closing of the sale while it was held in escrow by Stewart Title Company in Stewart Trust, Escrow File #:801297.

18. For the reasons explained below, the Defendant Property represents the proceeds from the sale of Derek Smith's residence, and, therefore, is property constituted or derived from proceeds of Derek Smith's fraud against XPR.

19. Records indicate that Derek Smith signed a contract to purchase his residence in Moses Lake on or about April 24, 2017. Smith subsequently applied for and was granted a home loan through GESA Credit Union / DMI. At the time of purchase, Smith made a down payment from a Horizon Credit Union for $8,286.08.

20. Records indicate that in 2018 and 2019, Smith made mortgage payments via online banking on interstate wires totaling $65,315.30 from Smith's Horizon Credit Union account to his GESA home mortgage, which was during the period of his fraudulent activities.

21. Records indicate that in May 2019, Smith made mortgage payments via online banking on interstate wires totaling $6,019.36 from Smith's Wheatland Bank account to his GESA home mortgage, which was during the period of his fraudulent activities.

22. Based on these facts and transactions, a total of $71,334.66 in fraud proceeds were used by Derek Smith to pay the mortgage on his residence.

23. Based on the foregoing, the Defendant Property, which represent Smith's proceeds from the sale of the residence, is property traceable to Smith's illegal

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* 11

activities and is property constituting or derived from wire fraud in violation of 18 U.S.C. § 1343 and bank fraud in violation of 18 U.S.C. § 1344. Consequently, the Subject Property is subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and (C) and (b), and 28 U.S.C. § 2461.

## VI. CONCLUSION

Based on the foregoing, the United States alleges that the Defendant Property is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), because it constitutes proceeds or was derived from proceeds traceable to a violation(s) of 18 U.S.C. § 1343, Wire Fraud and 18 U.S.C. § 1344, Bank Fraud.

WHEREFORE, the United States of America requests that notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the property; that the Defendant Property be forfeited and condemned to the United States of America; that the plaintiff be awarded its costs and disbursements in this action and for such other and further relief as this Court deems proper and just.

DATED this 21st day of January 2021.

William D. Hyslop
United States Attorney

*s/ Brian M. Donovan*
Brian M. Donovan
Assistant United States Attorney

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  12

## VERIFICATION

I, Randolph Redder, hereby verify and declare under penalty of perjury that I am a Special Agent with the United States Secret Service, in Spokane, Washington, that I have read the foregoing Verified Complaint *in rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent.

I hereby verify and declare under penalty of perjury that the foregoing information is true and correct.

DATED this  21st  day of January 2021.



Randolph Redder, Special Agent
United States Secret Service

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  13

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America,

## DEFENDANTS
$26,516.45 U.S. FUNDS

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant **Grant**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Brian M. Donovan, United States Attorney's Office, P.O. Box 1494, Spokane, WA 99210-1494, (509) 353-2767

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
[x] 1 U.S. Government Plaintiff
[ ] 2 U.S. Government Defendant
[ ] 3 Federal Question *(U.S. Government Not a Party)*
[ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**PRISONER PETITIONS**
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [x] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
[x] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from Another District *(specify)*
[ ] 6 Multidistrict Litigation - Transfer
[ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. § 981(a)(1)(C).
Brief description of cause:
civil forfeiture for bank and wire fraud violations

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
**DEMAND $** _____
CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: January 21, 2021
SIGNATURE OF ATTORNEY OF RECORD: BRIAN DONOVAN
Digitally signed by BRIAN DONOVAN
Date: 2021.01.21 14:34:17 -08'00'

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____